Argued and submitted March 4, affirmed May 29, 1996

STATE OF OREGON,
Department of Justice,
Support Enforcement Division ex rel
Angela BINSCHUS,
*Respondent,*

*v.*

Scott SCHREIBER,
*Appellant.*

(92-05-182F; CA A88580)

917 P2d 1063

David B. Hydes argued the cause and filed the briefs for appellant.

Gayle Branaugh Jebbia argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Father appeals from the trial court's orders denying his request to change custody from mother to him and awarding mother attorney fees. ORS ch 109. On *de novo* review, ORS 19.125(3), we affirm.

Father filed this proceeding to obtain legal custody of his daughter. Mother and father have never been married, and mother has had custody of their child since her birth in August 1988. In April 1992, an administrative order established father's paternity and ordered him to pay monthly child support. That order was filed in Grant County Circuit Court and became a judgment under ORS 416.440.

In December 1992, the trial court entered an uncontested visitation order setting forth father's visitation rights with child in detail. In August 1994, father initiated this proceeding by filing a motion to show cause why custody should not be changed from mother to him. At the hearing, he argued that there had been a significant change in circumstances since the orders establishing paternity and permitting visitation and that a change in custody would be in the best interest of the child. The trial court issued a detailed memorandum opinion addressing father's arguments. Based on the findings in that opinion, the trial court entered an order denying his motion for a change in custody. Thereafter, it entered a separate order awarding mother attorney fees.

■ Initially, the parties disagree about the statutory basis for father's motion to change custody. Mother argues that ORS 109.103[1] governs father's motion, while he relies on ORS 109.175.[2] The statutes provide different legal criteria for

---

[1] ORS 109.103 provides:

"If a child is born out of wedlock and paternity has been established, either parent may initiate a civil proceeding to determine the custody or support of the child. The proceeding shall be brought in the circuit court of the county in which the child resides or is found or in the circuit court of the county in which either parent resides. The parents shall have the same rights and responsibilities regarding the custody and support of their child that married or divorced parents would have, and the provisions of ORS 107.095 to 107.425 that relate to the custody or support of children shall be applicable to the proceeding."

[2] ORS 109.175 provides:

"If paternity of a child born out of wedlock is established * * * the parent with physical custody at the time of filing of the petition or the notice * * * or

the court to consider. ORS 109.103 generally governs proceedings to determine custody of a child born out of wedlock after paternity is established. ORS 109.175 deals specifically with the initial decision on that issue. The latter provides that the trial court, in making an initial determination of custody, is primarily to apply the best interests of the child standard and that neither party has the burden of demonstrating a change in circumstances.

Father's initial pleading in this action was a motion to show cause why custody should not be changed from mother to father after paternity and visitation had been established. Consequently, this proceeding is not an initial proceeding under ORS 109.175 but is governed by ORS 109.103. *See Hermens v. Veal*, 117 Or App 316, 318, 843 P2d 1013 (1992); *Langley and Logan*, 99 Or App 619, 622 n 2, 783 P2d 1017 (1989) ("ORS 109.103 makes the provisions of ORS 107.137 applicable to proceedings to determine the custody of children born out of wedlock."); *Gleason v. Michlitsch*, 82 Or App 688, 692-93 n 5, 728 P2d 965 (1986) ("The provisions of ORS 107.105 apply to a proceeding to determine custody and support of a child born out of wedlock after paternity is established. ORS 109.103.").

■■ Under ORS 109.103 and the statutes that it incorporates by reference, father must show a substantial change of circumstances since the last award of custody and that the change in custody is in the child's best interests. *Cedra and Cedra*, 136 Or App 104, 108, 901 P2d 263 (1995), *rev den* 322 Or 598 (1996). Father's first and second assignments of error relate to the trial court's determination of custody. Father concedes that mother has been the primary parent for their child. However, he argues that mother's lack of care necessitates a change in custody. At the hearing, he presented evidence regarding the close relationship that he and his wife have had with the child. He also produced evidence that the child has suffered from episodes of head lice, pink eye and

---

the parent with physical custody at the time of the filing of the joint declaration of paternity, has sole legal custody until a court specifically orders otherwise. The first time the court determines who should have legal custody, neither parent shall have the burden of proving a change of circumstances. The court shall give primary consideration to the best interests and welfare of the child and shall consider all the standards set out in ORS 107.137."

dental problems while in the care of mother and that she does not wear eye-glasses as prescribed by an optometrist. He offered testimony of two experts, who recommended a change in custody.

In support of her position to retain custody, mother presented testimony from the child's teachers and others who described the child as healthy, happy and thriving, both physically and mentally. Regarding father's expert witnesses, one had seen only the child and had not seen mother and the child interact. The other witness admitted during cross-examination that there was nothing in his recommendations to indicate that child should be removed from her present home. As to that witness, the trial court found, "Dr. Mowry's bottom line is that 'the stronger parenting and better overall home appears to be that provided by the natural father * * * and his wife * * *.' " The court concluded "that the only discernable adverse effect on the child was not from mother's care but the considerable discomfort * * * from this dispute." After review of the entire record and weighing all of the evidence, we are persuaded that the trial court's decision was correct. Stability is a key factor in the raising of healthy children of the child's age. She has thrived in mother's custody despite some lapses in care by mother. Under the circumstances, a change in custody is not warranted.

In his third assignment of error, father argues that (1) the trial court erred in awarding mother attorney fees because mother alleged the wrong statute as authority for the award; (2) mother's motion for attorney fees was untimely; and, (3) mother incurred no personal expense for her attorney and, therefore, the award of attorney fees was not for the "benefit" of mother as required by ORS 107.135(7).

■ Mother filed her motion for attorney fees on the morning of trial. In support of her motion, she asserted that ORS 107.135(7) provided the statutory basis for an award of attorney fees. ORS 109.103 provides that "the provisions of ORS 107.095 to 107.425 that relate to the custody or support of children shall be applicable to the proceeding." ORS 107.135 provides in part:

"(1) The court has the power at any time after a decree of annulment or dissolution of marriage or of separation is granted, upon the motion of either party * * * to:

"(a) Set aside, alter or modify so much of the decree as may provide for the * * * custody, visitation, support and welfare of the minor children * * *.

"* * * * *

"(7) In a proceeding under subsection (1) of this section, the court may assess against either party a reasonable attorney fee and costs for the benefit of the other party."

Because the provisions of ORS 109.103 incorporate ORS 107.135, ORS 107.135(7) authorized the trial court to award attorney fees in this case.

■ Father next argues that mother's motion for attorney fees was not timely filed because it was filed on the day of trial. Although mother filed her request for attorney fees on the day of trial, a separate hearing was held on the issue of attorney fees almost three months after the trial. At the hearing on the request for attorney fees, the trial court found:

"If I had thought that * * * [mother] having raised the issue late was prejudicial and I see nothing in * * * [father's] response that indicates that there was any prejudice, I would perhaps have made a different ruling. But it's such a common issue * * * I've permitted the pleading to be filed and the issue to remain in the case."

Father concedes that ORCP 15 D grants the trial court broad discretion to allow any pleading or motion even if untimely.[3] Nevertheless, father argues that to assert a claim on the morning of trial is "patently unreasonable." In *Hall v. Fox*, 106 Or App 377, 808 P2d 99 (1991), we held that the requirement that a party allege a right to attorney fees in a pleading may be satisfied by amendment of pleadings, even after trial, when no prejudice is shown. In this case, father does not explain persuasively how he was prejudiced. The

---

[3] ORCP 15 D provides:

"The court may, in its discretion, and upon such terms as may be just, allow an answer or reply to be made, or allow any other pleading or motion after the time limited by the procedural rules, or by an order enlarge such time."

trial court did not abuse its discretion when it permitted mother's motion for attorney fees to be filed.

■      Father also contends that because mother was represented by an attorney from legal aid and legal aid is funded by other means, she should not be awarded attorney fees. We rejected a similar argument in *Kendall v. Daggett*, 139 Or App 170, 173, 911 P2d 971 (1996). In *Kendall*, the trial court denied attorney fees on the ground that the defendant was represented by a legal aid attorney who "purportedly spent an excessive amount of time on the case and that the local filing fee assessments in Wallowa and Union counties made approximately $13,000 available to Legal Aid." *Id.* We held that those grounds did not support the denial of attorney fees to the legal aid attorney and reversed the trial court's denial of attorney fees.

Father also argues that ORS 107.135(7) provides that the court may assess "a reasonable attorney fee and costs for the benefit of the other party," and because mother incurred no cost for her attorney fees, the award will not benefit her contrary to the intent of the statute. We disagree. In *Domingo v. Anderson*, 138 Or App 521, 529 n 10, 910 P2d 402 (1996), we discussed the nature of the relationship between an organization that represents a party without charging a fee in order to further the organization's goals:

> "In such situations the client is not the incidental beneficiary of some other legal obligation of the organization; rather, the client and the organization have the common interest of achieving the organization's purposes in the specific case. The organization does not receive a windfall if the losing party bears the burden of the successful joint promotion of that purpose." *Id.*

In this case, mother was represented by a legal aid attorney. The purpose of legal aid is to provide representation to persons in mother's situation, and she benefited from that representation. Given the nature of the relationship and mother's need for legal services, the trial court's order fulfills the intent of the statute.[4] We conclude that the trial court properly awarded attorney fees in this case.

Affirmed.

_____

[4] Father does not argue that the attorney fee award will not be paid directly to legal aid nor does the record indicate the nature of the fee agreement between legal aid and mother regarding attorney fees.